## No. C-727

**Catherine C. Corper, The Volunteers of America, Inc., Karen S. Kidneigh, Ann Rickoff, Bernardo R. Valdez and Marvia Valdez v. The City and County of Denver, Larry J. Perry, James J. Nolan, M. L. Sandos, Paul A. Hentzel, Kenneth M. MacIntosh, L. Don Wyman, Edward F. Burke, Jr., Elvin R. Caldwell, Salvadore Carpio, Cathy Donohue, William R. Roberts, Stephen P. Grogan, and Cathy Reynolds as the members of the City Council of the City and County of Denver and The Mount Airy Foundation**

## No. C-734

**The City and County of Denver, Larry J. Perry, James J. Nolan, M. L. Sandos, Paul A. Hentzel, Kenneth M. MacIntosh, L. Don Wyman, Edward F. Burke, Jr., Elvin R. Caldwell, Salvadore Carpio, Cathy Donohue, William R. Roberts, Stephen P. Grogan, and Cathy Reynolds as the members of the City Council of the City and County of Denver v. The Mount Airy Foundation, Catherine C. Corper, The Volunteers of America, Inc., Karen S. Kidneigh, Ann Rickoff, Bernardo R. Valdez and Marvia Valdez**

## No. C-737

**The Mount Airy Foundation v. Catherine C. Corper, The Volunteers of America, Inc., Karen S. Kidneigh, Ann Rickoff, Bernardo R. Valdez and Marvia Valdez, and The City and County of Denver and Larry J. Perry, James J. Nolan, M. L. Sandos, Paul A. Hentzel, Kenneth M. MacIntosh, L. Don Wyman, Edward F. Burke, Jr., Elvin R. Caldwell, Salvadore Carpio, Cathy Donohue, William R. Roberts, Stephen P. Grogan, and Cathy Reynolds as members of the City Council of the City and County of Denver**

(552 P.2d 13)

Decided July 12, 1976. Rehearing denied August 3, 1976.

Wagner, Wyers and Vanatta, Harold B. Wagner for Catherine C. Corper, The Volunteers of America, Inc., Karen S. Kidneigh, Ann Rickoff, Bernardo R. Valdez and Marvia Valdez.

Long and Jaudon, James A. Dierker, for The Mount Airy Foundation.

Max P. Zall, City Attorney, Robert M. Kelly, Assistant, John L. Stoffel, Jr., Assistant, for The City and County of Denver and Larry J. Perry, et al, as members of the City Council of the City and County of Denver.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

We granted certiorari to review *Corper v. Denver*, 36 Colo. App. 118, 536 P.2d 874 (1975). Three petitions for certiorari were filed by the several parties directed to a single judgment. Although all three petitions were granted separately, they have been consolidated and will be reviewed collectively.

The opinion of the court of appeals sets forth both the procedural and the substantive facts. They will not be repeated here except as necessary to the discussion.

There are two principal issues which command our attention: (1) Did the method by which the trial court dealt with this matter constitute reversible error under the circumstances of this case; and (2) was there sufficient evidence before the city council to justify its amendment of the official zoning map? For the reasons hereinafter set forth, we affirm the judgment of the trial court upholding the rezoning action of the city council.

There are other issues raised which are ancillary to the above-enumerated principal issues, which will be discussed in the course of this opinion.

I.

■ Subsequent to the issuance of the court of appeals opinion in *Corper, supra*, this court announced its decision in *Snyder v. Lakewood*, 189 Colo. 421, 542 P.2d 371 (1975), in which we held that the amendment of a general zoning ordinance is a quasi-judicial act reviewable under C.R.C.P. 106(a)(4). We further held such method of review to be, "an exclusive remedy to challenge a *rezoning* determination where the entire *general* zoning ordinance is not challenged and where a review of the record would be an adequate remedy."

*Snyder* also held that:

"In order to support a finding that the action of a municipal legislative body is quasi-judicial [rather than legislative], all of the following factors must exist: (1) a state or local law requiring that the body give adequate notice to the community before acting; (2) a state or local law requiring that the body conduct a public hearing, pursuant to notice, at which time concerned citizens must be given an opportunity to be heard and present evidence; and (3) a state or local law requiring the body to make a determination by applying the facts of a specific case to certain criteria established by law."

■ Denver is an Article XX home rule city. It has a comprehensive zoning ordinance which was adopted in 1956. Chapter 618 of that ordinance is devoted to zoning amendment procedure. It meets the criteria for quasi-judicial action set forth in the preceding quotation. Although the ordinance refers to the action of the council and its zoning committee as "legislative", we perceive it to be quasi-judicial in the context of our rules as delineated in *Snyder*. Labels do not control our determination; sub-

stance does.

The trial court foreclosed the adjacent homeowners (plaintiffs in the trial court who challenged the rezoning decision of the city council) from having the record of proceedings before the city council certified to the district court by dismissing the C.R.C.P. l06(a)(4) petition. However, the matter proceeded to trial, and the court permitted the parties to, in effect, reconstruct the record of the proceedings before the city council. There are, therefore, before this court the same exhibits which were before the city council: a history of the zoning of the subject property; the efforts to rezone over a long period of time; the action and recommendations of the board of adjustment, the planning committee and the city council; as well as a transcript of the testimony at the city council hearing.

Under the state of the record here, the same standards of review obtain as if we were considering the matter on a record made at the rezoning hearing before the city council and certified by it to the district court.

A court subjecting a rezoning decision of a city zoning authority to C.R.C.P. 106(a)(4) review must uphold the decision unless there is no competent evidence to support it. *Ford Leasing Develop. Co. v. Board of County Commissioners*, 186 Colo. 418, 528 P.2d 237 (1974). One claiming the invalidity of a rezoning ordinance has the burden of establishing its invalidity beyond a reasonable doubt. *Wright v. City of Littleton*, 174 Colo. 318, 483 P.2d 953 (1971); *Bird v. City of Colorado Springs*, 176 Colo. 32, 489 P.2d 324 (1971).

Consequently, the weighing of the evidence and the determinations of fact are not matters for consideration by the reviewing court, but are functions of the rezoning authority acting in its quasi-judicial capacity. If the trial court finds that the record shows compliance by council with the procedural requirements and there is competent evidence of a factual basis for the rezoning decision, it must affirm the action of the zoning authority.

The trial court, in detailed findings, found that all procedural requirements had been fulfilled by both the city and the applicant, Mount Airy Foundation, and that the rezoning ordinance had been passed in the manner required by law. Our review of the record confirms the correctness of the trial court rulings on these issues.

II.

The single most important issue raised by the homeowners relates to the amendment procedure. *Denver Revised Municipal Code* 618.1. This provision states the criteria which governs the council in all rezoning situations. It reads:

".1. Declaration of Public Policy. For the purpose of establishing and maintaining sound, stable and desirable development within the territorial limits of the municipality, this ordinance, and as here used the term ordinance shall be deemed to include the official map, shall not be

amended except to correct a manifest error in the ordinance or, because of changed or changing conditions in a particular area or in the municipality generally, to rezone an area or extend the boundary of an existing district, or to change the regulations and restrictions thereof, only as reasonably necessary to the promotion of the public health, safety or general welfare. . . ."

On this issue, the homeowners in their petition for writ of certiorari seemingly conceded that there was evidence of changed or changing conditions in the municipality generally, but contended that there was a failure to show changed or changing conditions in the particular area. Having thus conceded, they nevertheless contended that

"[i]t was therefore incumbent upon Mount Airy to produce evidence of change in the immediate area, that is the land within 200 feet of the area proposed for a change. There was no such evidence. In passing the zone amendment ordinance, the council disregarded the rules which it had established."

■ The homeowners disregard the clear, unequivocal language employed. Specifically, after admitting that there was evidence of "changed or changing conditions in the municipality generally," they ignored the disjunctive "or" which coupled that criteria with "conditions in a particular area." We note, also, that contrary to homeowners' contention the criteria says nothing about the "immediate area, that is the land within 200 feet of the area proposed for a change."

Turning now to some of the evidence which the council had before it in support of changed or changing conditions, we find ample support for the trial court's conclusion approving the council's decision.

The history of this property shows that Mount Airy owned and operated a hospital on it prior to the 1956 comprehensive zoning ordinance. It also shows that some of the property was nonconforming and that, beginning as early as 1961, Mount Airy attempted on several occasions to get the property rezoned to conform to the uses for which the property was being or was to be used. The planning office in each instance recognized the need for the expansion of the hospital because of changing conditions and recommended the rezoning. The council, apparently because of opposition, and partly because it did not want to extend R-3 zoning north of Twelfth Avenue, postponed final action on the application.

The action which finally precipitated the amendment of the map to establish R-5 zoning of the subject property began in earnest in 1970 with Application No. 2158. The response of the Denver Planning Office to the Department of Zoning Administration's request for review of that application is pertinent. It recommended that the application for R-3 be denied, but that it be approved for R-5. It continues:

"1. There has been a general need for the expansion of many hospital facilities in this area to meet the needs of the increasing population."

The zoning committee of the city council advised applicant that if it would amend its application to include all of Block 5, Bellevue Park (which included property not owned by Mount Airy), an ordinance for the amendment would be introduced. After further negotiations, an application to rezone a slightly lesser area to R-5 was filed on July 5, 1972 (Application No. 2380). The application set forth in detail the legal basis justifying the sought for change. Upon review, the planning office staff again found that "there has been a general need for the expansion of many hospital facilities in this area to meet the needs of the increasing population."

Objections were again voiced by the homeowners. This time council postponed action in the hope that the applicant and the homeowners could work out a mutually acceptable solution. As a result of the negotiations, the applicant again reduced the area sought to be rezoned and filed an amended application reflecting this concession to the homeowners. The amended application was again reviewed by the planning office.

In its report to the city council it set out "Factors Which Support the Proposed Rezoning" and "Factors Against the Proposed Rezoning". Since this is sufficient competent evidence to support the action of council in adopting its ordinance amending the zone map, it is set forth verbatim:

"FACTORS WHICH SUPPORT THE PROPOSED REZONING:
1. The proposed change conforms to the Comprehensive Plan.
2. There has been a general need for the expansion of many hospital facilities in this area to meet the needs of the increasing City population.
3. Granting R-5 for the entire hospital property will allow the hospital to expand and eliminate the existing R-3 zone and discourage future requests for R-3 zoning north of 12th Avenue.
4. One of the reasons that the R-5 zone was established was to permit expansion of institutional uses located in low-density residential areas, thus assuring the adjoining properties that institutional properties cannot be converted to high density residential uses.
5. This proposal would correct the present intrusion of R-3 into the R-1 area above 12th Avenue.
6. The R-5 zone would prevent the intense usage allowed in the present R-3 zone.

"FACTORS AGAINST THE PROPOSED REZONING:
1. The proposed rezoning would reduce the number of future land use options available to the landowner.
2. The proposed R-5 zone in the R-1 area would allow considerably more intensity of usage in that area than is now possible.
Based on the above considerations, the Planning Office staff recommends for APPROVAL of the proposed rezoning."

The council's action was based on competent evidence of changed conditions in the area and in the municipality generally, thus bringing its

action doubly within the standards which it had set for itself. The standard, we note, requires that the amendment be made "only as reasonably necessary to the promotion of the public health, safety or general welfare." The evidence before the council indicates that the amendment of the map was in the public interest in that it allowed for expanding a health facility without subjecting the area to increased high density living units.

 There is no showing of an abuse of discretion, even in the face of conflicting evidence on some points. Therefore, we must affirm. *Board of County Commissioners v. Simmons*, 177 Colo. 347, 494 P.2d 85 (1972). The trial court, of necessity, would have to reach a similar result were it to consider the matter anew as a C.R.C.P. 106(a)(4) review. It would only delay the final result to remand the cause to the trial court under the court of appeals mandate. We elect to decide the matter and terminate what must have seemed to be interminable to the litigants.

The other assignments of error have either been adequately answered by the court of appeals or they are not of sufficient merit to further prolong this opinion.

The judgment of the court of appeals upholding the rezoning ordinance is affirmed. The cause is remanded to the court of appeals with directions to vacate the order to the trial court so far as it directs "further proceedings as set forth in Sections I and III" of its opinion, and to fashion an order remanding the cause to the district court not inconsistent with this opinion.

MR. JUSTICE ERICKSON concurs in the result. .

MR. JUSTICE HODGES does not participate.