563 P.2d 359 (1976)
AMERICAN WATER WORKS ASSOCIATION, Plaintiff-Appellant,
v.
BOARD OF ASSESSMENT APPEALS, an agency of the State of Colorado, et al., Defendants-Appellees.
No. 75-827.
Colorado Court of Appeals, Div. II.
November 4, 1976.
Rehearing Denied December 2, 1976.
Certiorari Denied May 2, 1977.
*360 Davis, Graham & Stubbs, Randall Weeks, Charles D. Calvin, Denver, Morgan, Lewis & Bockius, Benjamin M. Quigg, Jr., Jack H. Harper, Philadelphia, Pa., for plaintiff-appellant.
J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., Mary A. Rashman, Asst. Atty. Gen., Denver, for defendants-appellees.
RULAND, Judge.
The Board of Assessment Appeals denied the application of American Water Works Association (AWWA) for exemption from ad valorem taxation of the land and building which comprises its national headquarters in Denver. AWWA sought judicial review in the district court of the Board's order and joined as parties in that action the State Property Tax Administrator, the City and County of Denver, and the City Manager of Revenue. The district court affirmed the Board's order. AWWA appeals, and we reverse.
The following undisputed facts relevant to this appeal were established in a hearing before the Board. AWWA was founded in 1881 and subsequently incorporated in the State of Illinois as a nonprofit corporation. Its articles of incorporation recite that:
"The object for which it is formed is the advancement of knowledge of public water supply, furnished either by public or private ownership and the management of water works; the exchange of information pertaining to the management of water works and water supply, for the mutual advancement of the interests of consumers and suppliers, and for the purpose of securing economy and uniformity in operation . . .."
AWWA has approximately 23,000 members, 80 percent of whom are individuals, variously classified as student, active, life, and honorary members. The balance of membership consists of various types of organizations interested in the water supply field. These organizations are classified as utility members (consisting of either public utilities or those owned by private investors), consultant members (engineers), associate members (firms engaged in the manufacturing or furnishing of products or services in connection with public water supply), *361 manufacturers agent members (salesmen), contractor members (firms which construct and maintain water utilities), and technical service members (organizations which use and treat water, such as Coca Cola).
Most of the individual members are employed by water utilities. Of the organizational members, 70 percent are water utilities of which most are municipally owned. Less than two percent of the organizational membership consists of manufacturers and contractors who work in the water supply field.
AWWA is operated through a board of directors and executive committee. The board has 47 members who are elected from its membership. One board member is elected by each of the 39 regional sections, five are elected nationally, and three are appointed to represent the organizational members. One of the local sections is the Rocky Mountain section which encompasses various western states, including Colorado.
Pursuant to its corporate objective, and through the volunteer efforts of its diverse membership operating usually in the form of committees, AWWA has researched and published numerous materials covering a vast range of topics in the public water supply field. One of the publications is a 1,100 page volume prepared in cooperation with other public health organizations governing standard methods for use in examination of water and wastewater. A similar volume of standards has been published by AWWA for use in construction, operation, and management of water works, including e. g., such subjects as pipe, chemicals, meters, tanks, pumps, and service lines. The standards are continually revised and updated. In addition, AWWA presents seminars and training courses throughout the United States dealing with such subjects as operation of water works under emergency conditions, chlorination, and procedures for avoiding entry of contaminated water into potable water supply systems. The seminars and publications are available to non-members as well as members. It is estimated that the voluntary efforts of the various AWWA members in researching, preparing, and presenting the materials for their various programs require the efforts of over 7,000 members and have a value in excess of $1,000,000 per year.
While only two percent of its members reside in Colorado, these members represent 63 water utilities, serving approximately 84 percent of the State's population. Through the Rocky Mountain section of AWWA, its various programs are made available to the utilities in this state. At the time of the hearing before the Board, seminars had either been presented or scheduled by the Rocky Mountain section during 1973 for water utility employees in Rifle, Montrose, La Junta, and Fort Collins.
Representatives of both the Denver Water Board and the Colorado Springs Department of Public Utilities testified that the standards established by AWWA, as well as various other publications, are used by their respective departments, that their departments have neither the finances nor the manpower to research and develop similar information, and that this information thus represents a substantial benefit to the taxpayers and water users. Similarly, the standards are instrumental to utilities both in the bidding process for construction, and in the maintenance of their water works systems. The State Health Department also uses the standard methods volume as a guide in its laboratories which allows Department employees to devote more time to field work.
AWWA finances the various programs through membership dues, sales of its various publications, some of which contain paid advertisements, and by charging fees for attending its seminars and for purchase of its various publications. The membership dues range from $10 per year for student membership to $750 for some of the organizational members. Eighty percent of the members pay annual dues of $25. No dividends or distributions of income are made to members. While AWWA has managed to accumulate a financial surplus, it is clear that the cost of its publications to both *362 members and nonmembers is far less than the value of the materials contained therein.
Having determined that Denver was an excellent central location for its activities, AWWA purchased a three-acre tract from the Denver Water Board for erection of its national headquarters in 1972. It erected thereon a building valued at approximately $800,000. The location of AWWA's national headquarters in Denver will be of further assistance to the utilities of this state by reason of the proximity of AWWA's library and staff.
While the Board recognized that AWWA actively benefited an indefinite number of persons, including municipal corporations, so that the tax burdens of government are lessened, it concluded that AWWA had not established its entitlement to a tax exemption because the various programs were not made available to members and nonmembers as "charity." The Board reached this conclusion because fees are charged for membership, publications, and seminars, and advertising revenues are derived from some of the publications.
The legal principles governing resolution of AWWA's claim are not disputed. While it has obtained an exemption for purposes of income taxation pursuant to § 501(c) of the Internal Revenue Code, that determination is not dispositive of its claim for exemption from ad valorem taxation. See, e. g., American Concrete Institute v. Michigan State Tax Commission, 12 Mich. App. 595, 163 N.W.2d 508 (1968). In order to qualify for exemption, it must appear that AWWA's property is owned and used solely for strictly charitable purposes. Colo. Const. Art. 10, Sec. V; § 39-3-101(1)(g)(I), C.R.S.1973. While tax exemption statutes are strictly construed, Young Life Campaign v. Board of County Commissioners, 134 Colo. 15, 300 P.2d 535 (1956), each case must be resolved on the basis of its own facts. United Presbyterian Ass'n v. Board of County Commissioners, 167 Colo. 485, 448 P.2d 967 (1968). In United our Supreme Court analyzed its prior decisions pertaining to tax exemption status and pointed out that the concept of "charitable purposes" as defined in Jackson v. Phillips, 96 Mass. (14 Allen) 539, was applicable in this jurisdiction. Insofar as pertinent here, the Jackson Court stated:
"A charity in the legal sense, may be more fully defined as a gift to be applied consistently with existing laws, for the benefit of an indefinite number of persons. . . by erecting or maintaining public buildings or works or otherwise lessening the burdens of government."

Applying the foregoing principles, we conclude that the undisputed evidence establishes as a matter of law that AWWA's property is used for strictly charitable purposes.
The interest of the state and local government in assuring a safe water supply is legislatively established. See, e. g., § 25-8-102; § 25-8-204; § 25-9-101, C.R.S.1973. AWWA's programs benefit the vast majority of citizens in this state through lessening the burdens of government in this area. As indicated, 63 Colorado water supply utilities are members of AWWA. The savings to the water consumers by use of the AWWA standards and other materials in the construction, operation, and maintenance of various water utilities is not disputed. It is likewise not disputed that but for the AWWA standards and other materials, taxpayer dollars and additional manpower would be necessary even in Colorado's two largest cities to develop similar information at a substantially increased cost to the water consuming public.
Nor can we agree with the Board's conclusion that AWWA's claim must fail because no "gift" is involved when fees are charged for membership, for its publications and seminars, and for advertising in certain of its publications. The fees are charged to meet operating expenses and to develop new programs. The narrow interpretation of "gift" suggested by the Board would defeat the exempt status of any charitable organization which imposed fees *363 for its services in order to remain financially solvent. Financial insolvency is not a condition precedent to tax exempt status. See Appeal of the Vanguard School, 430 Pa. 378, 243 A.2d 323 (1968). The gift in this case consists of the benefits derived by the water consumers in this state who are the direct beneficiaries of AWWA's various programs in the form of improved operation, management, and construction of their water works system, but who are not required as taxpayers or water users to pay the obvious and substantial cost to research, develop, and maintain those programs. See, e. g., American Society for Testing & Materials v. Board of Revision, 423 Pa. 530, 225 A.2d 557 (1967); American Society of Agricultural Engineers v. Township of St. Joseph, 53 Mich.App. 45, 218 N.W.2d 685 (1974).
There is no basis in the record to suggest that any members or nonmembers who use AWWA's publications and attend its seminars are unable to pay or are burdened by the nominal charges for this information. As stated in United, supra: "Once the right to tax exemption has been clearly established, then this court has approved great latitude of method in effecting the charitable result."
The judgment is reversed and the cause remanded to the district court with directions to enter judgment directing the Board of Assessment Appeals to grant AWWA's application for tax exemption.
ENOCH and VanCISE, JJ., concur.