The ELECTRIC POWER RESEARCH IN-
STITUTE, INC., a District of Columbia
corporation, Plaintiff-Appellee,

v.

The CITY AND COUNTY OF DENVER,
and Thomas P. Briggs, the Manager of
Revenue for the Department of Reve-
nue for the City and County of Denver,
Defendants-Appellants.

No. 85SA134.

Supreme Court of Colorado,
En Banc.

May 26, 1987.

Rehearing Denied June 15, 1987.

Kelly, Stansfield & O'Donnell, William F. Skewes, Denver, for plaintiff-appellee.

Stephen H. Kaplan, City Atty., Robert F. Strenski, Asst. City Atty., Denver, for defendants-appellants.

KIRSHBAUM, Justice.

The City and County of Denver (Denver) appeals[1] the district court's reversal of a decision of the Manager of Revenue of Denver's Department of Revenue (the Department) that the Electric Power Research Institute, Inc. (EPRI) is not a charitable corporation exempt from payment of sales tax pursuant to section 53–26(2) of the Denver Revised Municipal Code (the Municipal Code). The district court ruled that EPRI is a charitable corporation for purposes of Denver sales tax exemption and that EPRI was denied due process of law by delay in the administrative review process. We affirm in part, reverse in part, and remand with directions.

I

EPRI, incorporated as a nonprofit corporation in the District of Columbia, conducts and sponsors research and development projects with respect to the production, transmission, distribution and use of electricity. To further its nationwide activities, it employs approximately 750 people and owns property, facilities and equipment valued at over $26 million. EPRI's projects are usually costly in light of the requisite materials, equipment and personnel, and

---

1. Denver initially appealed to the Court of Appeals; the Court of Appeals certified the case to this court pursuant to § 13–4–109, 6 C.R.S. (1973). This court accepted jurisdiction pursuant to § 13–4–110, 6 C.R.S. (1973).

most of them are undertaken by other entities and agencies pursuant to contracts.

EPRI's activities are funded primarily by membership dues, which in 1980 amounted to over $254 million. EPRI also receives licensing fees from entities using EPRI's patents and copyrights. Pursuant to its bylaws, EPRI's membership consists of five classes: entities owned by the federal government (Class I); cooperative associations and cooperative corporations engaged to a substantial degree in providing electric power for public use (Class II); nonfederal governmental or other public entities (Class III); private investor-owned corporations (Class IV); and individual members (Class V). Several entities have memberships in more than one class; there are no individual (Class V) members.

In August 1976, pursuant to a plan to construct and operate an air pollution control research facility at an electric power station in Denver, EPRI applied for exemption from Denver sales and use taxation.[2] EPRI's application was denied by the Department, which concluded that EPRI did

not qualify for tax exemption as a charitable corporation under the then-applicable Municipal Code.[3] Upon reconsideration in July 1977, the application was again denied, at which time EPRI was informed by the Department that further administrative relief could be sought by paying sales tax to a supplier and filing a claim for a refund.

■ In May 1980, EPRI filed a claim for a sales tax refund[4] of $8.10, relying on section 53–26 of the Municipal Code, which provides in pertinent part:

> There shall be exempt from taxation under the provisions of this article the following:
>
> . . . .
>
> (2) All sales made to religious or charitable corporations when purchased for their regular religious or charitable functions and activities.

Denver, Colo., Rev.Mun.Code § 53–26 (1981). In August 1982, the claim for refund was denied by the Department. EPRI petitioned for a hearing, but at

---

2. EPRI has been granted tax-exempt status as a scientific organization pursuant to § 501(c)(3) of the Internal Revenue Code and has been granted exemptions from various other forms of taxation by state and local authorities. The following list is illustrative: exemption from Colorado income taxation, § 39–22–117, 16B C.R.S. (1982) (concurrent with I.R.C. § 501(c)(3) exemption); exemption from Colorado personal property taxation, § 39–2–117, 16B C.R.S. (1982); exemption from Colorado sales taxation, § 39–26–114, 16B C.R.S. (1982); exemption from District of Columbia sales, use and excise taxation, D.C.Code § 47–2005 (1981); exemption from Connecticut sales and use taxation, Conn.Gen.Stat. § 12–412 (1987); exemption from Massachusetts sales taxation, Mass. Gen.Laws Ann. ch. 64H, § 6(d)–(e) (West 1969); exemption from New Jersey sales and use taxation, N.J.Stat.Ann. § 54:32B (1986); exemption from New Mexico gross receipts taxation, N.M. Stat.Ann. § 7–9–12 (1978); exemption from New York state and local sales and use taxation, N.Y.Tax Law § 1116 (McKinney 1975); exemption from Pennsylvania sales and use taxation, Pa.Stat.Ann. tit. 72, § 7204 (Purdon 1986); and exemption from Texas sales, excise and use taxation, Tex.Tax Code Ann. § 151, Subchapter H (Vernon 1982). Section 8 of EPRI's Articles of Incorporation provides that if at the time of dissolution of the corporation EPRI enjoys exempt status under I.R.C. § 501(c)(3), any transfers or conveyances of the remaining assets

shall be limited to organizations also enjoying exempt status. Exemption from taxation in other jurisdictions is, of course, not dispositive of a claim for exemption under the Denver Revised Municipal Code. See, e.g., West Brandt Found., Inc. v. Carper, 652 P.2d 564, 567 (Colo.1982) (exemption from state and federal income taxation is not dispositive of claim for exemption from Colorado property taxation).

3. The pertinent provision of the Denver Municipal Code (1950) in effect at that time, § 166, provided:

> .11. **Items Exempt from Taxation.** There shall be exempt from taxation under the provisions of this article the following:
>
> . . . .
>
> .11–2. All sales made to religious, charitable and eleemosynary corporations, in the conduct of their regular religious, charitable or eleemosynary functions and activities.

Denver, Colo., Mun.Code § 166 (1950). It is undisputed, however, that the issue before this court, whether EPRI's May 1980 claim for a sales tax refund should be granted, is controlled by Denver Revised Municipal Code § 53–26 (1981), which superseded Denver Municipal Code § 166 (1950).

4. Claims for refunds of disputed sales tax payments are governed by §§ 53–42 and 53–43 of the Municipal Code.

EPRI's request the hearing was twice postponed, ultimately being held in October 1983.

In March 1984, the hearing officer for the Department entered his order. He concluded that EPRI is primarily an investor-owned, profit-motivated organization that exacts payment from nonmembers for all its research reports and other information and, therefore, is not a charitable corporation for purposes of exemption from payment of Denver sales taxes. EPRI appealed to the district court pursuant to C.R.C.P. 106(a)(4), which court reversed the hearing officer's determination. The district court concluded that certain of the hearing officer's findings were not supported by the evidence, that the hearing officer applied an erroneous standard in determining EPRI's status, and that application of the correct standard required the conclusion that EPRI is a charitable corporation for purposes of exemption from payment of Denver sales taxes.[5]

## II

Denver initially suggests that the district court improperly substituted its own findings of fact for those of the hearing officer. It is true that administrative findings of fact supported by the record may not be overturned by a reviewing court in C.R.C.P. 106 proceedings. *See, e.g., Ross v. Fire & Police Pension Ass'n*, 713 P.2d 1304 (Colo.1986); *Denver Center for Performing Arts v. Briggs*, 696 P.2d 299 (Colo. 1985). A review of the district court's order and of the record reveals that the court

did not substitute its own factual findings for those of the hearing officer, but rather that the court carefully measured certain critical findings of the hearing officer against the record and found those findings not supported by any evidence.

■ Rule 106(a) of the Colorado Rules of Civil Procedure states in pertinent part:

> In the following cases relief may be obtained in the district court by appropriate action under the practice prescribed in the Colorado Rules of Civil Procedure:
>
> . . . .
>
> (4) Where any governmental body or officer or any lower judicial body exercising judicial or quasi-judicial functions has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy otherwise provided by law:
>
> (I) Review shall be limited to a determination of whether the body or officer has exceeded its jurisdiction or abused its discretion, based on the evidence in the record before the defendant body or officer.

7A C.R.S. (1986 Supp.). Thus, Rule 106(a)(4) requires district courts to set aside final orders of an administrative agency if the agency, in the exercise of quasi-judicial authority, exceeds its jurisdiction or abuses its discretion. *City & County of Denver v. Eggert*, 647 P.2d 216 (Colo. 1982). In fulfilling this role, the reviewing court may determine whether there was any competent evidence to support the agency's findings of fact, *Denver Center*

---

**5.** EPRI sought only a sales tax refund in the claim it filed with the Department. In its complaint before the district court EPRI sought both sales and use taxation exemption, as well as declaratory relief according EPRI the status of a charitable corporation effective August 1976, the date of EPRI's initial application for exemption from sales and use taxation. The district court ordered that EPRI be awarded exemption from both sales and use taxation effective May 5, 1980, the date EPRI filed its claim for a sales tax refund. We conclude that EPRI is entitled to exemption from Denver sales taxation effective May 5, 1980, but that the district court exceeded its authority in granting use taxation exemption. The claim for refund of Denver sales tax was the sole claim reviewed by the

Manager of Revenue hearing officer and, therefore, was the claim to which the district court was limited in its review process.

The Denver Revised Municipal Code, § 53–97, provides in pertinent part:

> There shall be exempt from taxation under the provisions of this article the following:
>
> . . . .
>
> (2) All sales made to religious or charitable corporations when purchased for their regular religious or charitable functions and activities.

Denver, Colo., Rev.Mun.Code § 53–97 (1981). We do not here decide whether EPRI qualifies as a charitable corporation for purposes of Denver use taxation exemption.

*for Performing Arts v. Briggs,* 696 P.2d 299, as well as whether an erroneous legal standard was applied by the agency, *see, e.g., de Koevend v. Board of Educ.,* 688 P.2d 219 (Colo.1984); *Shearer v. Board of Trustees,* 121 Colo. 592, 218 P.2d 753 (1950); *cf. Rosenberg v. Board of Educ.,* 710 P.2d 1095 (Colo.1985) (whether hearing officer misconstrued the law may be considered in determining whether officer abused discretion).

■ The determination of whether EPRI is a "charitable corporation" for purposes of obtaining a sales taxation exemption under the Municipal Code, while dependent to a large extent upon factual analysis, does not involve only questions of evidentiary fact. The determination is one of ultimate fact, involving a conclusion of law or a mixed question of law and fact. *See, e.g., Denver Center for Performing Arts v. Briggs,* 696 P.2d 299 (in reviewing decision of local Manager of Revenue under Rule 106(a)(4), interpretation of language of a contract is question of law to be resolved by the court). An administrative agency's determination of ultimate fact may be set aside on review if there is no reasonable basis for the determination. *Lee v. State Bd. of Dental Examiners,* 654 P.2d 839 (Colo.1982).

### III

The City also argues that EPRI failed to satisfy its burden of establishing that it is a charitable corporation entitled to sales taxation exemption under the Municipal Code. We disagree. Before addressing this evidentiary issue, however, we must consider whether the hearing officer and the district court applied correct legal principles to the evidence.

Both the hearing officer and the district court noted that the term "charitable corporation" is not defined by the Municipal Code. This court has not previously had occasion to interpret this provision of the Municipal Code. However, in *United Presbyterian Association v. Board of County Commissioners,* 167 Colo. 485, 448 P.2d 967 (1968), in determining that a nonprofit association was not entitled to an exemp-

tion from payment of *ad valorem* property taxes on a senior citizens' residential home owned by the association, we quoted with approval the following definition of "charity" articulated in 1867 by the Massachusetts Supreme Judicial Court in the case of *Jackson v. Phillips,* 96 Mass. (14 Allen) 539 (1867):

> A charity, in the legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government.

*Id.* at 556. *See also West Brandt Found., Inc. v. Carper,* 652 P.2d 564 (Colo.1982); *Board of County Comm'rs v. Denver & R.G. R.R. Co. Employes' Relief Ass'n,* 70 Colo. 592, 203 P. 850 (1922); *Bishop and Chapter of Cathedral of St. John The Evangelist v. Treasurer of Denver,* 37 Colo. 378, 86 P. 1021 (1906); *American Water Works Ass'n v. Board of Assessment Appeals,* 38 Colo.App. 341, 563 P.2d 359 (1976).

In view of the vast array of beneficial activities presently undertaken by numerous nonprofit entities to improve the conditions under which all citizens live, the attempts to define the term "charity" as a "gift" must inevitably prove problematic. Nevertheless, we must strive to give the enigmatic word "charitable" used in the Municipal Code its usual and ordinary meaning. *See Transponder Corp. of Denver v. Property Tax Adm'r,* 681 P.2d 499 (Colo.1984). Both parties, the hearing officer and the trial court recognized that our case law has consistently adopted the *Jackson v. Phillips* concept in analyzing requests for tax exemption, and we are not persuaded to reject the basic concept therein articulated.

■ The particular facts of a given case in which a concept is to be applied are of primary importance. As applied in pre-

vious cases, the concept of "gift" in the context of a request for tax exemption requires analysis of both the beneficent objects, goals or purposes of the entity and the organization's actual conduct. An organization's activities must be faithful to its beneficent purposes to qualify as a charitable organization. For example, we have determined that an entity organized solely for its own benefit or the benefit of its members does not qualify as a charity even though as a secondary effect its activities benefit an indefinite number of people. *Board of County Comm'rs v. Denver & Rio Grande R.R. Co. Employes' Relief Ass'n*, 70 Colo. 592, 203 P. 850. Similarly, a nonprofit corporate owner of a camp used in the summer by church-affiliated groups did not qualify as a charity when the evidence established that the camp was used primarily by nonreligious groups. *West Brandt Found., Inc. v. Carper*, 652 P.2d 564. It is also clear, however, that an entity otherwise satisfying the test of beneficial purpose and appropriate conduct will not be denied charitable status simply because it charges some fees to maintain its financial solvency. *See Bishop and Chapter of Cathedral of St. John The Evangelist v. Treasurer of Denver*, 37 Colo. 378, 86 P. 1021; *American Water Works Ass'n v. Board of Assessment Appeals*, 38 Colo. App. 341, 563 P.2d 359.

■ In our view, the district court properly concluded that EPRI satisfied its burden of proving that it was a charitable corporation for purposes of the sales taxation exemption of the Municipal Code.[6] The hearing officer found that the great majority of EPRI's funding is provided by investor-owned corporations, that investor-owned corporations own most of EPRI's voting rights and that EPRI's membership consists primarily of profit-motivated organizations from the private sector. Although the first two of these findings are supported by the record, the hearing officer's finding that EPRI consists primarily of private profit-motivated organizations (Class IV members) is not supported by the evidence, as the district court ruled. EPRI in fact is composed of four distinct classes of members. The majority of EPRI's members fall within the Class I, Class II or Class III membership classes. The evidence is uncontradicted that the members of these categories are entities owned by the federal government; cooperative associations or cooperative corporations engaged to a substantial degree in the production, transmission, or distribution of electric power for public use; and nonfederal governmental or other public entities. Thus, governmentally owned or publicly oriented entities constitute the greatest number of member organizations.

The formula for calculating EPRI's membership dues is based on the number of kilowatt hours of electricity annually produced by the member and the amount of gross revenues received annually by the member. Voting rights are assigned on a similar basis. The fact that, based on this formula, private sector members provide most of EPRI's operating funds does not render the corporation noncharitable. The test is not whether EPRI is privately or nonprivately funded, but whether it is organized for beneficent purposes and whether its conduct in fact primarily serves those purposes. The uncontradicted evidence established that not only do member govern-

6. The district court properly overturned the hearing officer's conclusion that EPRI is not a charity because it does not provide any services to nonmembers without charge. The hearing officer's test was too narrow, *see American Water Works Ass'n v. Board of Assessment Appeals*, 38 Colo.App. 341, 563 P.2d 359 (1976), and the evidence indicates that in fact EPRI does provide some services to nonmembers without cost. Undisputed evidence in the record establishes that EPRI bases its charges for publications on reproduction costs and that the charges in no way reflect the actual costs expended on the research projects which form the basis of the published data. EPRI's general counsel testified that government agencies, environmental groups and persons from the higher education community avail themselves of these publications for the nominal charges imposed by EPRI. Other evidence established that EPRI publications are at present available without cost to federal government agencies and, in the past, have been made available without cost to libraries of federal, state and local government agencies. This evidence that EPRI's products—its research reports—are and have been available to some nonmembers without cost is also not disputed.

mental and other public entities and the consumers of the energy they produce benefit directly from EPRI's programs, but that some nonmember entities and persons also benefit directly from EPRI's research reports at little or no cost. The research EPRI performs at its Denver location benefits all citizens of Colorado in that information concerning means to reduce air pollution and increase efficiency in the production and transmission of electricity is of great benefit to persons, governmental bodies and other organizations concerned with improving Colorado's environment. Although EPRI introduced very little evidence to demonstrate directly the manner in which its research activities reduced the burdens of government, it is undisputed that research in this area cannot be achieved without expending large sums of money—expenditures that may be avoided by the taxpayers of the governmental members of EPRI and the nonmember private parties and nonmember government agencies who may acquire EPRI's publications. In view of this uncontradicted though admittedly sparse evidence of EPRI's purposes and actual conduct, we conclude that the district court did not abuse its discretion in determining that EPRI satisfied its burden of proof on the question of its status as a charitable corporation for purposes of section 53–26(2) of the Municipal Code.

## IV

The district court concluded that EPRI was denied due process of law by the delay between the filing of the refund claim in May 1980 and the holding of the administrative hearing in October 1983, as well as by the manner in which the hearing was conducted and the manner in which the findings of fact and conclusions of law were provided to the hearing officer by Denver.[7] We disagree.

■ The essential principles of due process apply to administrative hearings. *Mountain States Tel. & Tel. Co. v. Department of Labor & Employment,* 184 Colo. 334, 520 P.2d 586 (1974). However, no particular or specific procedure is mandated by due process considerations so long as the basic elements of opportunity for a hearing and judicial review are present. *Lamm v. Barber,* 192 Colo. 511, 523, 565 P.2d 538, 546 (1977). Here, EPRI filed its claim for a sales tax refund in May 1980, the claim was denied in August 1982 and a hearing was set for March 1983. At EPRI's request two continuances were granted, delaying the hearing until October 1983. While the pace of administrative review may have been less than optimal, we cannot conclude that the delays attributable to the Department constitute a per se denial of due process of law. Moreover, there is no infringement of due process rights unless a party has been prejudiced by the procedure to which he objects. *Ricci v. Davis,* 627 P.2d 1111 (Colo.1981). EPRI has not alleged any prejudice. In the absence of some showing that a delay in administrative adjudication resulted in some prejudice, such as by interfering with a party's capacity to prepare or present its case or by causing economic hardship, delay tantamount to a denial of due process cannot be presumed.[8] *E.g., G.H. Walker & Co. v. State Tax Comm'n,* 62 A.D.2d 77, 403 N.Y.S.2d 811 (N.Y.App.Div.1978) (no denial of due process rights where delay in administrative adjudication did not inter-

---

7. In its written order the district court mentioned only the delay between the filing of the refund claim in May 1980 and the denial of the claim by the Department in August 1982 as constituting a due process violation. In its oral ruling the court also alluded to due process violations in the delay encountered by EPRI from the time it filed the refund claim in May 1980 until the hearing was held in October 1983, as well as in the manner of conducting the hearing and in the manner in which the findings of fact and conclusions of law were provided to the hearing officer.

8. Similarly, when only property rights are involved, mere postponement of judicial inquiry does not constitute a denial of due process if an adequate opportunity for the ultimate judicial determination of liability is afforded. *Lamm v. Barber,* 192 Colo. at 523, 565 P.2d at 547 (citing *Phillips v. Commissioner of Internal Revenue,* 283 U.S. 589, 596–97, 51 S.Ct. 608, 611, 75 L.Ed. 1289 (1931)).

fere with party's capacity to prepare or present its case); *cf. In re Bassette*, 518 A.2d 15 (Vt.1986) (delay of seventeen months between remand order by court and issuance of findings by agency did not violate broker's due process rights where the conduct of broker's business was not constrained during delay).

■ At the administrative hearing, both EPRI and Denver were represented by counsel. EPRI provided the only witness, EPRI's general counsel and corporate secretary, and produced twenty of the twenty-two exhibits admitted into evidence. EPRI contends that the Denver City Attorney's adversarial manner violated EPRI's due process rights. The City Attorney objected to the admission of certain evidence which was offered by EPRI, but those objections were overruled and the evidence was admitted. Certainly, mere objection to the introduction of certain evidence cannot be categorized as a per se denial of due process. Similarly, EPRI contends that the hearing officer's adoption of Denver's proposed findings of fact and conclusions of law constituted a denial of EPRI's rights to due process. However, EPRI submitted objections to Denver's proposed findings and conclusions and also submitted its own proposed findings and conclusions. EPRI thus appears to have been given a full and fair opportunity to be heard. *See Lamm v. Barber*, 192 Colo. 511, 565 P.2d 538; *People in the Interest of D.A.K.*, 198 Colo. 11, 596 P.2d 747 (1979) (fundamental fairness is the cornerstone of due process), *appeal dismissed sub nom., J.K.S. v. Colorado*, 444 U.S. 987, 100 S.Ct. 515, 62 L.Ed.2d 416 (1979). Furthermore, the mere fact that the hearing officer adopted Denver's proposed findings of fact and conclusions of law is insufficient of itself to raise an implication of partiality on the part of the hearing officer. *See Soon Yee Scott v. City of Englewood*, 672 P.2d 225 (Colo.App.1983) (there is a presumption of integrity, honesty and impartiality in favor of those serving in quasi-judicial capacities) (citing *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975)). We conclude that EPRI was not denied due process of law.

The judgment of the district court that EPRI is a charitable corporation entitled to a sales tax refund under the Denver Revised Municipal Code is affirmed. The judgment that EPRI was denied due process of law is reversed, and the case is remanded to the district court with directions to remand the case to the Denver Manager of Revenue with directions to refund the $8.10 which was the basis of the claim for sales tax refund and to accord EPRI charitable corporation status for the purpose of Denver's sales taxation exemption ordinance effective from the date of the application for refund, May 5, 1980.

ERICKSON and ROVIRA, JJ., join in this opinion.

DUBOFSKY, J., concurs in the judgment of the Court and delivers a specially concurring opinion.

VOLLACK, J., concurs in part and dissents in part and delivers an opinion in which QUINN, C.J., and LOHR, J., join.

DUBOFSKY, Justice, specially concurring:

I specially concur in Part III of the majority opinion. I join the remainder of the majority opinion.

I agree with the majority's conclusion that EPRI is a charitable corporation, but the majority fails to take the next step: its analysis lacks any indication that the taxpayers of Denver will have their burden of government reduced by EPRI activities.

Section 53–26 of the Denver Revised Municipal Code provides:

There shall be exempt from taxation under the provisions of this article the following:

\* \* \* \* \* \*

(2) All sales made to religious or charitable corporations when purchased for their regular religious or charitable functions and activities.

I believe that in considering whether a charitable corporation seeking a sales tax exemption engages in regular charitable functions and activities we should address,

as we have in property tax exemption cases, whether the activity reduces the burden of government.

The analysis employed by this court to determine whether a taxpayer lessens the burdens of government has required more than a simple claim by the taxpayer that its purpose is a public one. In *United Presbyterian Ass'n v. Board of County Commissioners*, 167 Colo. 485, 448 P.2d 967 (1968), a non-profit owner of a senior citizens' residential home sought an exemption from ad valorem taxes. The court held that the association's non-profit status under the income tax laws could not be equated with charitableness entitling a taxpayer to a property tax exemption. Moreover, although care for the aged was denominated "a proper concern of government," *id.* at 975, the court held that the governmental obligation does not extend to the care of physically and financially independent elderly persons who qualified for admission to the home. The court concluded that in order for the term "charitable" to apply, "[t]here must be present a benefit to the general public which is sufficient to justify the loss of tax revenue." *Id.*

In *West Brandt Foundation, Inc. v. Carper*, 652 P.2d 564 (Colo.1982), the non-profit corporate owner of a mountain camp sought a property tax exemption on the basis that some of the groups that used the camp were church-affiliated and that the camp was used in the summer for a religious purpose. This court denied the requested exemption because the majority of camp uses were for non-religious purposes and because the camp benefited only out-of-state residents. We summarized the test for entitlement to a property tax exemption:

> Eligibility for exemption is determined by examining the use to which the property is put, not the character of the owner. *United Presbyterian Ass'n*, [448 P.2d 967]. Thus, the fact that the West Brandt Foundation is exempt from state and federal income taxation as a non-profit organization is not dispositive of its claim for exemption from *ad valorem* taxation, which must be considered under independent criteria. *American Water*

*Works Ass'n v. Board of Assessment*, 38 Colo.App. 341, 563 P.2d 359 (1976).

\* \* \* \* \* \*

One justification for exempting charitable enterprises from taxation is that they perform functions which tax-supported governmental entities would otherwise be required to perform, *United Presbyterian Ass'n, supra; Young Life Campaign v. Board of County Commissioners*, 134 Colo. 15, 300 P.2d 535 (1956); *Kemp v. Pillar of Fire*, [94 Colo. 41, 27 P.2d 1036 (1933)]; Note, *Exemption of Educational Philanthropic and Religious Institutions from State Real Property Taxes*, 64 Harv.L.Rev. 288 (1950); Ginsberg, [*The Real Property Taxation of Nonprofit Organizations: A Perspective*, 53 Temple L.Q. 291 (1980).] Thus, it is appropriate to determine whether the use of property is of a kind which relieves government of a task it would otherwise have to perform, and whether the benefit conferred by that use inures primarily to the people of Colorado upon whom the burden of any additional taxation resulting from exemptions will fall. *See United Presbyterian Ass'n, supra; Young Life Campaign v. Board of County Commissioners*, [134 Colo. 15, 300 P.2d 535 (1956)]; *American Water Works Association*, [38 Colo. App. 341, 563 P.2d 359 (1976)].

*West Brandt Foundation*, 652 P.2d at 567, 568–569.

Finally, in *American Water Works Ass'n v. Board of Assessment Appeals*, 38 Colo.App. 341, 563 P.2d 359 (1976), the court of appeals considered whether property owned by the American Waterworks Association ("AWWA") that comprised its national headquarters in Denver should be exempt from ad valorem taxation on the basis that AWWA provided research and training relating to public water supply for 63 water utilities in Colorado that served approximately 84% of the state's population. The court adopted the definition of charitable purpose from *United Presbyterian Ass'n* and concluded that the gift "consists of the benefits derived by the

water consumers in this state who are the direct beneficiaries of AWWA's various programs in the form of improved operation, management, and construction of their water works system, but who are not required as taxpayers or water users to pay the obvious and substantial cost to research, develop, and maintain those programs." *Id.* at 363.

In the instant case the Arapahoe Air Pollution Control Test Facility is located at 2601 South Platte River Drive in Denver on the premises of the Arapahoe Power Station owned by the Public Service Company of Colorado (PSC). EPRI has an arrangement with PSC to test equipment and conduct experiments utilizing the flue gas from the coal-powered boiler at the power station. A witness for EPRI testified at the administrative hearing that EPRI has developed various ways for measuring different types of pollutants that are contained in certain gases. EPRI also has developed various techniques of removing these pollutants or mitigating their effects. The stated goal of this work is to develop economically and technologically feasible ways to improve air quality. EPRI has made the results of its work available to its members and the general public through the publication of technical reports for sale at a modest cost to pay for publishing expenses.

EPRI is involved in activities within the city and county of Denver that benefit the general public and the citizens of Denver. Reducing levels of environmental pollution is a function of government, and EPRI's work lessens the burdens of government. Although I agree with the majority that EPRI established that it is a charitable corporation for sales tax exemption purposes, I believe that the analysis should be tied to a determination that EPRI is entitled to an exemption from contributing to Denver's revenue because its activity reduces the burden of government in Denver.

VOLLACK, Justice, concurring in part and dissenting in part:

I concur with Part IV, which holds that Electric Power Research Institute [hereinafter EPRI] was not denied due process. However, I respectfully dissent from Parts II and III, in which the plurality holds that the district court did not abuse its discretion when it ruled, under C.R.C.P. 106(a)(4) review, that EPRI is a non-profit corporation eligible for tax-exempt status under the Denver Revised Municipal Code.

## I.

The plurality correctly recognizes that C.R.C.P. 106(a)(4) permits a district court's reversal of an administrative agency's ruling if the administrative body exceeded its jurisdiction or abused its discretion. C.R.C.P. 106(a)(4), 7A C.R.S. (1986 Supp.). However, the plurality fails to acknowledge this court's prior construction of C.R.C.P. 106(a)(4). We have held that:

[J]udicial review pursuant to C.R.C.P. 106(a)(4) *permits a district court to reverse* a decision of an inferior tribunal *only if there is "no competent evidence"* to support the decision. "No competent evidence" means that the ultimate decision of the administrative body is so devoid of evidentiary support that it can only be explained as an arbitrary and capricious exercise of authority. Under either the "substantial evidence" [1] or "no competent evidence" standard, the appropriate *consideration for an appellate court* is whether there is sufficient evidentiary support in the record for the decision of the administrative tribunal, and *not whether there is an adequate source of evidence to support the decision of the district court.*

*Ross v. Fire and Police Pension Ass'n*, 713 P.2d 1304, 1308–09 (Colo.1986) (footnote omitted) (citations omitted) (emphasis add-

---

1. The "substantial evidence" standard is the standard that applies when a court reverses a state agency's decision under section 24-4-106(7), 10 C.R.S. (1982), of the Administrative Procedures Act. The standard states that "a reviewing court can reverse a state agency's

decision if 'the agency action is ... unsupported by substantial evidence when the record is considered as a whole.'" *Ross*, 713 P.2d 1304, 1308. This is not the standard of review under C.R.C.P. 106(a)(4).

ed) [hereinafter *Ross* ]. By relying on its own analysis of the facts in concluding that EPRI qualifies as a tax-exempt, non-profit, charitable corporation, I believe the plurality fails to apply the law as set forth in *Ross.*

The issue is whether the district court, acting as an appellate review body, ruled correctly under C.R.C.P. 106(a)(4) when it reversed the hearing officer's decision. The test is whether the hearing officer abused his discretion or exceeded his jurisdiction. The standard is whether there was *any competent evidence* in the record to support the hearing officer's decision. *Ross,* 713 P.2d at 1309. Our role in reviewing the district court's reversal is to determine whether there was competent evidence in the record to support the hearing officer's decision. Because the record does reveal competent evidence on which the hearing officer relied, I believe the plurality is incorrect in affirming the district court's reversal.

The standard of review set out above is the long-recognized rule. *Harvey v. Jefferson County School Dist.,* 710 P.2d 1103, 1109 (Colo.1985) (where a hearing officer's resolution of factual disputes is supported by the record, this court "cannot disturb those findings"); *Rosenberg v. Board of Educ.,* 710 P.2d 1095, 1098–99 (Colo.1985) (the decision of a hearing officer "will not be reversed as an abuse of discretion unless, given the totality of the factual circumstances at the time of the decision, the hearing officer's decision exceeded the bounds of reason"); *Denver Center for the Performing Arts v. Briggs,* 696 P.2d 299, 305 (Colo.1985) ("C.R.C.P. 106(a)(4) allows only a limited review of whether an inferior tribunal exceeded its jurisdiction or abused its discretion"); *State Bd. of Medical Examiners v. Spears,* 79 Colo. 588, 596, 247 P. 563, 566, *appeal dismissed,* 275 U.S. 508, 48 S.Ct. 158, 72 L.Ed. 398 (1927) ("[n]either the district court nor this court may enter upon an investigation of the merits, or inquire if the board made a mistake in its findings of fact, or erred in its conclusions upon the facts"); *Jimerson v. Prendergast,* 697 P.2d 804, 806 (Colo.App. 1985) ("[i]n review of a quasi-judicial action

under C.R.C.P. 106(a)(4), a decision will be upheld if the ultimate findings are supported by any competent evidence").

The plurality characterizes the hearing officer's decision as to EPRI's charitable corporation status as "one of ultimate fact, involving a conclusion of law or a mixed question of law and fact." Maj. op. at 826. However, the district court expressly based its reversal on its finding of abuse of discretion by the hearing officer. "In considering whether there has been an abuse of discretion, courts may consider whether the hearing officer misconstrued the law." *Rosenberg,* 710 P.2d at 1099. The administrative agency's determination of ultimate fact may be set aside on review if it has no reasonable basis, but it "will be sustained if it has a *reasonable basis* in law." *Lee v. State Bd. of Dental Examiners,* 654 P.2d 839, 844 (Colo.1982) (emphasis added).

Based on this analysis, the plurality holds that EPRI is a charitable corporation, necessarily implying that the hearing produced no competent evidence on which the hearing officer's holding was based, and that there was no "reasonable basis in law" for holding that EPRI was not a charitable corporation for these purposes. *Id.* I believe this conclusion is contrary to the record. "[T]he weighing of the evidence and the determinations of fact are not matters for consideration by the reviewing court, but are functions of [the administrative body] acting in its quasi-judicial capacity." *Corper v. City & County,* 191 Colo. 252, 256, 552 P.2d 13, 15 (1976). If procedural requirements have been met and there is "competent evidence of a factual basis for the [administrative] decision," then the reviewing court must affirm. *Id.*

## II.

Keeping in mind our role and the district court's function under C.R.C.P. 106(a)(4), the record shows why the district court erroneously reversed the hearing officer's ruling. At the administrative hearing, counsel for both sides were present, and EPRI provided the only witness. EPRI's witness was its general counsel and corporate secretary. Twenty-two exhibits were

entered, of which twenty were provided by EPRI. After the administrative review hearing, the hearing officer issued a written order which set forth his findings, conclusions, and final determination that EPRI did not qualify for tax-exempt status as a charitable corporation. He found that EPRI was created to organize the efforts of the utility industry members in the area of research and development. The utility members pay membership fees, and in return, they are provided with results of EPRI's applied scientific research. When a utility member does its own research, it is entitled to a deduction of up to 20% of its membership fees to EPRI. In short, utility ratepayers pay the utility members, and the utility members pay EPRI for EPRI's services. The dispositive issue at the administrative hearing was whether EPRI was a "charitable organization." Noting that each case must be resolved on the basis of its own facts, the hearing officer compared the facts before him to the facts presented in the case of *American Water Works Ass'n v. Board of Assessment Appeals*, 38 Colo.App. 341, 563 P.2d 359 (1977) [hereinafter *AWWA* ], and determined that EPRI was not a charitable corporation.

The hearing officer did not merely hold that "EPRI is not a charity because it does not provide any services to nonmembers without charge," as the plurality suggests in footnote 5, Maj. op. at 825. The facts he relied upon included the non-diverse membership of EPRI, the primary purpose of EPRI (to assist its membership in research and development), and the fact that it did not meet any definition of a charity, under the definition adopted by this court in *United Presbyterian Ass'n v. Board of County Comm'rs*, 167 Colo. 485, 448 P.2d 967 (1968). He found that EPRI does not bestow any gift because it charges customers for reports, licenses, and other products and services. He also found that EPRI is not organized for the benefit of an indefinite number of persons. Rather, EPRI is an investment for members of the electric utility industry and provides a direct service to them. He found any benefit to non-members, such as the general public, to be merely incidental. Finally, he found

that any lessening of the burdens of government was also merely incidental. Accordingly, he denied the claim for tax-exempt status.

### III.

On appeal to the district court pursuant to C.R.C.P. 106(a)(4), the district court reversed, stating that the hearing officer's findings were "in contrast to the overwhelming preponderance of the evidence." He also held that the hearing officer's ruling was a misinterpretation of *AWWA*. The district court specifically found that the hearing officer had abused his discretion.

At a minimum, the facts in the record show competent evidence to support the hearing officer's decision. The test on C.R.C.P. 106(a)(4) review is not a preponderance of the evidence, as applied by the district court, but whether there is any competent evidence to support the hearing officer's ruling. The record also makes it clear that the hearing officer did not misapply *AWWA*, especially in light of the fact that both parties cited *AWWA* as dispositive of the result sought by each side. The fact that both parties relied on *AWWA* underscores the purpose and rationale behind C.R.C.P. 106(a)(4). Determination of a corporation's charitable status is a factual question, and application of the law to a particular set of facts is the duty of the hearing officer. The district court is not permitted to conduct a de novo review. *Hessling v. City of Broomfield*, 193 Colo. 124, 126, 563 P.2d 12, 13 (1977). If there is competent evidence in the record, it "cannot be said there was a clear abuse of discretion." *Ford Leasing Dev. Co. v. Board of County Comm'rs*, 186 Colo. 418, 425, 528 P.2d 237, 241 (1974).

Because the record shows competent evidence relied on by the hearing officer to support his decision, the district court erred. The district court's role under C.R.C.P. 106(a)(4) was to decide whether there was any competent evidence to support the hearing officer's findings. The district court's role was not to reevaluate the evidence and function as a second trier of

fact. Because there was competent evidence in the record to support the hearing officer's findings and decision, I would reverse the district court's order as being outside its jurisdiction under C.R.C.P. 106(a)(4). Accordingly, I respectfully dissent from the majority's holding in Part II and Part III.

I am authorized to state that QUINN, C.J., and LOHR, J., join in this concurrence and dissent.